CITED *in Howland* v. *Adrian*, 1 *Vr.* 46-51 ; *Haines* v. *Dubois, Id.* 263.

---

## DANIEL TOWNSEND v. THOMAS N. BROWN.

1. It has never been held in New Jersey that there could be, except by legislative grant, any individual ownership in the soil of the sea or its arms below low water mark. (Per GREEN, C. J.)

2. If the proviso in a statute be contrary to the purview, the proviso is valid, and not the purview.

3. Doubtful or ambiguous words in a statute will not be construed so as to grant away the rights of the public to individuals: the intention to make such grant must be clearly expressed.

4. The fourteenth section of the "Act for the preservation of clams and oysters," *Rev. Stat.* 495, does not authorize the owner of flats to stake off oyster beds beyond low water mark.

Townsend v. Brown.

This was an action of trespass submitted upon the following state of the case. The declaration is in the usual form, charging that the defendant, on the 27th November, 1849, broke and entered the close of the plaintiff, situate in the township of Galloway, in the county of Atlantic, and took and carried away 10,000 bushels of oysters of the plaintiff. Plea not guilty.

It is admitted that the *locus in quo* is a flat, over which the tide ebbs and flows, situate in said township and county at the mouth of Mott's creek, a few yards from Little Eggharbor bay, and along the shores of the tide waters between the Great Eggharbor and Little Eggharbor rivers; that the plaintiff owns the land adjoining said creek, his title calling for said creek, and that said flat is between the channel of said creek and said plaintiff's upland; that said flat is below the usual low water mark, but occasionally falls dry, perhaps twenty times in a year, and at very low tides; that the said plaintiff, before the trespass complained of, had marked out the said flat, by fixing stakes around the same, according to the provisions of the act in such case provided, and had planted oysters upon some parts of said flat, and that oysters grew naturally upon other parts of said flat; that the said defendant, on the said 27th November, 1849, entered on said flat inside the said stakes, and when there was no water covering said flat, and took therefrom one hundred bushels of oysters of natural growth, and one hundred bushels which had been planted there by the plaintiff; and that said stakes did not injure any navigation.

It is agreed that if, upon the foregoing state of the case, the court shall be of opinion that the plaintiff is entitled to recover for both the natural and planted oysters, that judgment be entered for the plaintiff for $10 and costs, and if only for the planted oysters, for $5 and costs; but that if the court should be of opinion that the plaintiff is not entitled for both or either, then that judgment be entered for the defendant, with costs.

Submitted upon written briefs; Mr. *Vredenburgh*, counsel of plaintiff, Mr. *Joel Parker*, of counsel with defendant.

Mr. *Vredenburgh*, for plaintiff.

The plaintiff rests his claim upon the 14th and 15th sections of the act entitled, "An act for the preservation of clams and oysters." *Statute of New Jersey, p.* 495.

The defendant resists it upon the last proviso in said 14th section. We contend that said last proviso was only intended to prevent injury to navigation, and that the word "nor," in said 14th section, should be construed "and."

The whole object and scope of section 14th is to enable the riparian owner to stake out beyond *ordinary* low water mark.

The things to be staked out are "flats or coves along the shores of tide waters." This certainly could not mean only the land between ordinary high and low water. A cove is permanently under water, a flat usually, or nearly so, except at very low tides. The land between ordinary high and low water is usually called the shore. If the enacting clause had intended to authorize the staking out only to ordinary low water mark, it would have said the shore between ordinary high and low water mark.

What was the object of staking out but to show the boundaries beyond low water mark? What would be the use of staking out between ordinary high and low water mark? Oysters would not grow there; there are no natural beds there—none are ever planted there. In section 16 of the same act, the legislature speaks of "flats which are at any time bare."

The first proviso in section 16 shows the meaning of the legislature. It provides said stakes shall not include any natural oyster beds *always* covered with water below low water mark. This shows the legislature meant to give the right to the owner to stake out all flats or coves below low water mark, even when always covered with water, where there were no natural oyster beds, and also to stake out all flats or coves beyond low water mark which were not *always* covered with water, even if they had natural beds on them. And the last proviso was added for fear that the land owners, in their eagerness to stake in flats or coves, might run their stakes across a navigable channel, and injure navigation. Any other construction to the last proviso would, we submit, stultify the whole section.

Mr. *Parker*, for defendant.

Upon navigable rivers or other waters where the tide ebbs and flows, the title of the shore owner extends to high water mark. 1 *Halst., Arnold* v. *Mundy* 67; 1 *Zab.* 162; 2 *Ib.* 441, 456.

It extends to low water mark for the purpose of erecting docks, &c., which exclude reflow of waters. 1 *Halst.* 10; 2 *Zab.* 465, 469, 470.

But the public have right of fishery and to oyster between high and low water mark under the control of the legislature, who represent the people's will. 3 *Harr.* 495.

And if a man *plant* oysters below high water mark where oysters usually grow, he has no greater right to them than to *natural* oysters in the same location. 1 *Halst., Arnold* v. *Mundy*, was a case of *planted* oysters. *Martin* v. *Waddell*, 16 *Peters.*

In view of the foregoing general principles, the plaintiff cannot recover of defendant for taking either *natural* or *planted* oysters, being in the locality designated in the state of the case.

But the plaintiff insists that this case is taken out of the operation of the general rule by force of the act in *Rev. Laws* 495–6, § 14 and 15.

What right does the act give? It gives to the shore owner the right to oysters to the ordinary low water mark, and forbids all others taking oysters above the ordinary low water mark. It may be said that it gives the shore owner the right between high water mark and the stakes; but the last proviso of the 14th section of the statute fixes the location of the stakes not to be beyond ordinary low water mark. If the stakes (contrary to the act) are put beyond the ordinary low water mark, the shore owner's rights cannot be extended by such violation of the statute—a statute under which the shore owner claims rights.

The only question then is, what is meant by ordinary low water mark. Is ordinary low water mark the place to which the water recedes a few times during the year? or is it, as defendant contends, the average or usual place where the water

Townsend v. Brown.

generally recedes at low water mark? The defendant regards the first as *extraordinary*, the last as *ordinary*. See *Arnold v. Mundy*, 1 *Halst. p.* 2. In that case the bed from which the oysters were taken was bare at very low tides, but was beyond ordinary low water mark.

In this case, by state of case, it appears that oysters were taken from ground not usually dry at low water, but dry twenty or thirty times a year. Although within the stakes, the oysters were certainly beyond ordinary low water mark. The stakes were improperly put beyond that mark.

If the above view be correct, the statute will not take this case out of the operation of the common law, and the defendant had a right to take the oysters; the shore owner has no right to recover damages for natural or planted oysters.

The defendant, therefore, is entitled to judgment against plaintiff.

The CHIEF JUSTICE. The only question involved in this case is, whether the laws of this state confer authority to stake out and appropriate oyster grounds in the county of Atlantic *below ordinary low water mark.* This depends upon the true construction of the 14th section of the act for the preservation of clams and. oysters, *Rev. Stat.* 495, by which it is enacted, "that it shall and may be lawful for any person or persons owning flats or coves along the shores of the tide waters in the county of Atlantic, between the Great Eggharbor and Little Eggharbor rivers, inclusive of the shores of so much of the said rivers as lie within the said county of Atlantic, to mark out, by fixing stakes across or around the same, at the distance of two rods from each other, and of such length as to be at least two feet above the ordinary high water, and to plant or lay clams, oysters, or other shell-fish within or above the same, provided said stakes shall not include any natural oyster beds always covered with water beyond low water mark; and provided also, it shall not be lawful to stake out beyond the ordinary low water mark nor injure any navigation publicly used." By the enacting clause, *all* flats or coves (being private property) may be staked off and appropriated

to individual use. By the first proviso it is declared that the said stakes shall not include any natural oyster beds always covered with water below low water mark. Thus far there is a clear grant of power to stake out all oyster grounds held as private property, either above or below low water mark, with the simple restriction that natural oyster beds shall not be enclosed. The second proviso declares that it shall not be lawful to stake out beyond the ordinary low water mark, *nor* injure any navigation publicly used. This proviso, in very terms, limits the grants to low water mark, and forbids staking out beyond that line. It is insisted, however, that the word "*nor*," in the proviso, means *and*, and that it was the intention of the legislature, by the proviso, simply to protect the rights of navigation, and that they meant to declare that it should not be lawful to stake out beyond the ordinary low water mark, and thereby injure any navigation publicly used.

The limitation of the right is in terms clear and unequivocal, that it shall not be lawful to stake out beyond the ordinary low water mark. But again, the grant is limited in terms to flats or coves held as *private property*. "It shall be lawful for any person or persons owning *flats* or *coves* along the shores," &c., to mark out the same. It is obvious that the statute was not designed to apply to particular tracts which had been the subject of legislative grant to individuals. It does not appear that there are any such tracts within the limits specified. It was designed as a general provision affecting all the coves or flats within an extended territory. To be of any value, the statute must be so construed. Now it is well known that there has been a prevalent sentiment, especially in West Jersey, that the title of the riparian proprietor upon navigable waters within this state extended over the shore and over flats, at least for certain specified purposes, to low water mark; and this opinion was entertained and expressed by a part of this court, and by a part of the Court of Errors and Appeals, in the case of *Gough* v. *Bell.*

The legislature, with this impression, may naturally have spoken of flats or coves above low water mark as owned by individuals, and may well have designed to give such owners

an exclusive claim to their enjoyment, for the purpose of plant-
ing and taking shell-fish.   But it has never been supposed or
imagined, so far as I am aware, that there was, or could be,
within this state, independent of legislative grant, any indi-
vidual ownership in the soil of the sea, or of the arms of the
sea, below low water mark.  It is difficult, therefore, to conceive
how the legislature (if they designed to apply the grant to flats
or coves below ordinary low water mark) could have spoken of
them as owned by individuals, and it is equally difficult, when
they have in very terms limited the grant to flats and coves
owned by individuals, to conceive that they intended the grant
to apply to flats or coves which are exclusively and peculiarly
public property, and never could be owned by any individual,
except by grant from the public.

It is said, however, that if the proviso be construed to limit
the grant to low water mark, it defeats the whole object of the
section, which is alleged to be to enable the owner to stake out
beyond ordinary low water mark.   There can be, it is said, no
possible utility in staking out above low water mark, and that,
if planted, oysters would not grow there.   Admitting the fact
to be as assumed, that the literal construction of the language
of the proviso will defeat the value of the grant, it cannot alter
the construction of the act.   The rule has long been established,
that if a proviso in a statute be directly contrary to the purview
of the statute the proviso is good, and not the purview, because
it speaks the later intention of the legislature.   *The Att'y Gen.*
v. *The Chelsea Water Works, Fitzg.* 195 ; *Bac. Ab., Statutes I.*
2 ; *Dwarris on Stat.* 660 ; 1 *Kent's Com.* 463.

The incongruity between the purview of the section and
the two provisoes may be naturally accounted for by the sup-
position that the act, as originally drawn, being limited to flats
and coves owned by individuals, was designed to extend only
to those above ordinary low water mark ; that the first proviso
was added, as the limits of the grant were not precisely de-
fined, to protect the *natural oyster beds*, and that the second
proviso was added by way of precaution, more clearly to ex-
press the precise intention of the legislature and effectually to

guard against any construction that could lead to an encroachment upon public rights.

I adopt this construction of the statute the more unhesitatingly because a question of public right is involved; and it is a rule of construction no less wise than clear, that in all cases of public grants the interpretation shall be most favorable to the public, and most strongly against the grantee. The rule is founded in wisdom. All experience teaches that public rights are yielded to private interests with sufficient alacrity. If the legislature really design to grant to individuals the right of several fishery below low water mark, it is easy to do so in plain and express terms. It is far better that the right should be unequivocally settled by legislative interference than that public rights should be frittered away by the aid of judicial construction.

It may be added, that the statute does not purport to grant any public property to individuals. It is entitled, "An act for the preservation of clams and oysters," and the obvious design of the section in question was to enable individuals the more effectually to protect rights with which they were already invested.

ELMER, J. It is not necessary to decide in this case whether the owner of oysters, who plants them where oysters fit for use do not naturally grow, in a place the title to which is vested in the state, but who, without infringing upon the property of others, so marks and designates the place and keeps up a continued assertion of ownership by such evidence as excludes the possession of any other person, thereby relinquishes his right to them, so that he cannot maintain trover or trespass against a person who takes them. In the case of *Shepherd* v. *Leverson* (*Penn. R.* 391) the place where the oysters were planted does not appear to have been in any way staked off or designated, and they were in no wise to be distinguished from those which grew there naturally. The question in the case of *Arnold* v. *Mundy* (1 *Halst.* 1) was as to the right of property and possession to the land covered with water where the oysters were planted. In the case of *Brinkerhoff* v. *Har-*

*kins* (11. *Barb. R.* 248) the court puts its decision against the claims of ownership in planted oysters on the ground that "the important evidence of property arising from an enclosure by stakes, or otherwise. was wanting."

The state of the case submitted to us does not show that the oysters claimed were so separate and distinct from those which grew naturally within the enclosure of the stakes, as to show that the plaintiff who planted them had not abandoned his possession of them by placing them among those of natural growth. The claim of the plaintiff has not been founded on his continued possession of the particular oysters taken, but rests on the right he undertook to assert by virtue of the 14th section of "An act for the preservation of clams and oysters." (*Rev. Stat.* 495.)

That section provides, "that it shall be lawful for any person or persons owning flats or coves along certain shores (within which the *locus in quo* is situate) to mark out, by fixing stakes across or around the same, at the distance of two rods from each other, and of such length as to be at least two feet above the ordinary high water, and plant or lay clams, oysters, or other shell-fish within or above the same, provided said stakes shall not include any natural oyster beds always covered with water beyond low water mark ; and provided also, it shall not be lawful to stake out beyond the ordinary low water mark nor injure any navigation publicly used."

Supposing the place staked off to be "beyond the ordinary low water mark," as would seem to be the meaning of the facts stated, it then becomes a question what is meant by the last proviso above quoted. On behalf of the plaintiff, it is insisted that we ought so to construe it as to make it consistent with the preceding proviso. But the language employed is too plain and distinct to justify a departure from its express meaning. To read this proviso as if the word "nor" was "and," so as to make it mean that the stakes below low water mark should not injure the navigation, would be to take a liberty with it for which there does not seem to be any necessity. In the case of *The Att'y General* v. *Governor of Chelsea Water Works* (*Fitzg.* 195, *Bac. Ab., Stat. I.* 2,) it was held, "that

if a proviso in a statute be directly contrary to the purview of the statute the proviso is good, and not the purview, because it speaks the later intention of the legislature." Where language is ambiguous, or where the evident intention, derived from a view of the whole law or other laws in *pari materia*, is different from the literal import of the terms employed, the intention ought to prevail; but where the language is plain and unambiguous there is no room for construction. In this case, the prohibition to place stakes below the ordinary low water mark is clear and unequivocal, and if it be inconsistent with the first proviso still it must be obeyed. The supposition that no more was meant than to prohibit so placing stakes below low water as to injure the navigation, would leave it to be inferred that stakes above the low water mark might be so placed as in fact to injure the navigation, which I think could not have been intended.

Being of opinion that the facts stated in the case do not show any exclusive right of the plaintiff to either the planted or the natural oysters, for the taking of which he claims damages, our judgment must be for the defendant.

HAINES, J., concurred.